Joanne MACKO, et al., Plaintiffs,

v.

Barry M. BYRON, et al., Defendants.

No. C77–1158.

United States District Court,
N.D. Ohio, E.D.

Nov. 14, 1983.

See also 555 F.Supp. 470.

Herbert L. Braverman, Shore & Kanter, Charles Laurie, Jr., Cleveland, Ohio, for plaintiffs.

Burt Fulton, Cleveland, Ohio, Abraham .Cantor, Willoughby, Ohio, for defendants.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

This case was originally filed with this Court on November 4, 1977 and assigned to Judge Ben C. Green. Upon Judge Green's death in January of 1983, the case was transferred to this Court for final disposition. On June 6, 1983 the Court set this matter for trial to commence Monday, September 26, 1983 at 9:30 a.m.

Prior to September 26, 1983, the Court, after reviewing the pleadings and other material submitted by the parties and the law applicable to the issues in this case in preparation for the trial of this matter, questioned whether the outstanding allegations of the plaintiffs stated a cause of action upon which relief could be granted. On September 26, 1983, prior to the start of trial, the Court questioned the plaintiffs as to the sufficiency of the legal theory under which the case was brought. Defendants, although they had not, themselves, raised

the issue of the sufficiency of the plaintiffs' complaint, were also given an opportunity to address the issue raised by the Court.

At that time, the parties, unable to provide the Court with a satisfactory answer to the question raised, requested leave to submit briefs to the Court on the issue of whether plaintiffs had stated a cause of action upon which relief could be granted.

Upon consideration, the Court continued the trial of this matter until Wednesday, September 28, 1983 at 9:30 a.m. and granted the parties leave until that time to submit briefs on the issue raised by the Court. The Court now has the briefs submitted by the parties before it.

To understand the issues presented in this case, one must also understand the history of the case. As stated before, this action was originally filed on November 4, 1977. The claims asserted by the plaintiffs arose out of a political fight in the City of Willoughby Hills, Ohio, wherein plaintiffs had sought to recall the defendants from public office.

On October 12, 1978, plaintiffs filed an amended complaint in three counts. Counts I and II asserted claims alleged to arise under 42 U.S.C. § 1983. In Count I plaintiffs alleged that defendant Monzula, as part of a conspiracy with the other defendants, violated the plaintiffs' constitutional rights by refusing to validate recall petitions submitted by the plaintiffs to her in her capacity as Clerk of Council. In Count II plaintiffs alleged that the local prosecutor, defendant Mitrovich, and his assistant, acting in concert with the other defendants, violated plaintiffs' constitutional rights by causing them to be indicted and arrested for violations of various Ohio laws relating to the recall petitions. Count III alleged that the defendants conspired to deprive plaintiffs of the equal protection of the law in violation of 42 U.S.C. § 1985.

On April 9, 1979, Judge Green filed a memorandum of opinion and order granting summary judgment in favor of the defendants on all three counts of plaintiffs' amended complaint.

Judge Green held that plaintiffs' claim in Count I was barred by the holding of the Ohio Supreme Court in *State ex rel. Macko v. Monzula*, 48 Ohio St.2d 35, 356 N.E.2d 493 (1976). In that case, the Supreme Court held that the recall petitions plaintiffs submitted to defendant Monzula were invalid based on a defect in the circulator's affidavit and, thus, defendant Monzula acted properly in refusing to validate them.

As to Count II, Judge Green held that defendant Mitrovich and his assistant were acting within their prosecutorial function and, thus, were absolutely immune from civil liability. Judge Green further held that the prosecutors having been dismissed by virtue of their prosecutorial immunity, the remaining defendants could not be said to have acted under color of state law, a prerequisite to maintaining an action under 42 U.S.C. § 1983.

Finally, Judge Green dismissed Count III on the grounds that plaintiffs had failed to allege that the defendants acted with a class-based discriminatory animus, which is necessary to maintain an action under 42 U.S.C. § 1985.

The plaintiffs appealed Judge Green's April 9, 1979 order to the Sixth Circuit Court of Appeals. On February 19, 1981, the Sixth Circuit entered its opinion affirming Judge Green as to Counts I and III. However, the Sixth Circuit reversed Judge Green as to Count II on the narrow grounds that the dismissal of the prosecutors based on prosecutorial immunity did not require the dismissal of the claims against the other defendants who are alleged to have conspired with the prosecutors.[1] Thus, the Sixth Circuit remanded the case to Judge Green for further proceedings as to Count II.

On May 21, 1981, the plaintiffs filed a second amended complaint in two counts. Count I again alleged that defendant Monzula, as part of a conspiracy with the other defendants, violated the plaintiffs' constitu-

---

1. Judge Green's dismissal of the prosecutors as to Count II was also affirmed.

tional rights by refusing to validate the recall petitions submitted to her by the plaintiffs. Count II was redrafted to essentially allege two violations of plaintiffs' constitutional rights. First, plaintiffs alleged that the defendants conspired to deny plaintiffs equal protection of the law by knowingly and maliciously giving false and incomplete information to a grand jury, and thereby causing plaintiffs to be indicted. Second, plaintiffs alleged that the defendants' actions were designed to discourage plaintiffs from initiating a second recall petition.

On September 28, 1981, the defendants filed a second motion for summary judgment. On October 1, 1982 Judge Green granted the defendants' motion as to Count I of the second amended complaint on the grounds that it was the same claim he had dismissed in 1979 and the dismissal of which had been affirmed by the Sixth Circuit in 1981. However, Judge Green denied the defendants' motion as to Count II.[2] In denying the motion, Judge Green held that the plaintiffs' allegations in Count II were sufficiently specific and that, if the plaintiffs could prove at trial that a conspiracy existed, the remaining defendants could be held liable for the actions of the previously-dismissed prosecutors.

Judge Green also held, in response to an argument by the defendants that Count II essentially stated a claim for malicious prosecution which would be precluded by the indictments issued by the independent grand jury, that Count II did not assert a claim for malicious prosecution. Judge Green held, instead, that in Count II plaintiffs had asserted a claim for selective prosecution in which questions of probable cause, guilt, or innocence were irrelevant.

On October 19, 1982, the defendants filed a third motion for summary judgment asserting that defendants had not acted under color of state law as to Count II and in the absence of state action, plaintiffs' only avenue for redress would be under 42

U.S.C. § 1985. The defendants further asserted that Judge Green had previously dismissed plaintiffs' claim under § 1985, and that dismissal had been affirmed by the Sixth Circuit and, thus, any claim under § 1985 would be barred. Before Judge Green had an opportunity to rule on the defendants' motion, the case was transferred to this Court. On June 3, 1983, this Court, having found a material issue of fact as to whether state action existed, denied the defendants' motion for summary judgment.

Accordingly, on September 26, 1983, when this matter came on for trial, the only claims pending against the defendants were those set forth in Count II of the second amended complaint. The essentials of plaintiffs' claims in Count II are found in paragraphs 14 and 18 of their second amended complaint, which assert:

14. Each defendant acting under color of law and in active concert with all other defendants and pursuant to defendant city's policies and procedures did conspire to deprive and did deprive plaintiffs of the equal protection of the laws by maliciously, knowingly and unlawfully giving incomplete and false information and preventing information to be provided to a grand jury and causing an indictment to be issued against plaintiffs by giving and not giving this information to the prosecuting attorney for Lake County and subsequently this directly caused secret indictments to be issued charging perjury and various violations of the Ohio laws relating to petitions.

18. Defendants' actions were perpetrated against plaintiffs to discourage plaintiffs from initiating a second recall drive and were also intended as punishment for plaintiffs having initiated their first recall effort, all in violation of their rights as provided under the Constitution.

This Court has raised the issue of whether the allegations in these two paragraphs

---

**2.** Judge Green did grant the defendants' motion as to the defendant City of Willoughby Hills

based on the statute of limitations.

are sufficient to state a claim upon which relief may be granted. The Court notes that while Judge Green never expressly addressed the issue, it is clear from his previous orders that he believed that plaintiff's had stated a cause of action in Count II. However, this Court is not bound by Judge Green's unexpressed belief.

There are essentially two claims in Count II. First, that the defendants conspired to give false testimony to the grand jury in order to have plaintiffs wrongfully indicted. Second, that the defendants obtained the indictments against the plaintiffs to discourage them from initiating a second recall petition. Additionally, there is the issue of selective prosecution. While this Court is of the opinion that the plaintiffs have not asserted a claim for selective prosecution, Judge Green found the existence of such a claim in Count II, and the parties accepted his finding without challenge.

■ Considering, first, plaintiffs' claim in paragraph 14 that the defendants conspired to and did give false testimony to the grand jury, the Court finds that plaintiffs are asserting, in effect, that they were indicted based on perjured testimony and that they have a claim under 42 U.S.C. § 1983 against the witnesses. Recently, in *Briscoe v. Lahue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Supreme Court held that witnesses in judicial proceedings are absolutely immune from civil liability under 42 U.S.C. § 1983 based on their testimony, even if they knowingly gave perjured testimony.

The Court went on to hold that, in the absence of such absolute immunity:

A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence.

The Court also stated that while its holding meant that there was no federal cause of action, those prejudiced by such perjury could seek redress in both state civil and criminal actions.

While this Court does not totally agree with the holding in *Briscoe,* it is nonetheless bound by it. Further, it is this Court's view that the same rule would apply to grand jury proceedings. Accordingly, the Court finds that the plaintiffs have failed to state a cause of action upon which relief may be granted in paragraph 14 of their second amended complaint.

■ However, this Court is of the view that if a person plans or a group of persons conspire to frustrate and violate the legitimate judicial process to an extreme and aggravated extent, there may be a § 1983 violation notwithstanding the holding in *Briscoe.* This would occur if such persons intend to and actually do, by intentional bad conduct, control the judicial process by giving false testimony before a grand jury and/or a court; and this testimony is the sole basis of an indictment and/or conviction; and it is subsequently determined that the foregoing happened and the wrongfully charged person was ultimately discharged before trial, acquitted after trial, or discharged after a reversal on appeal; the injured person would have a cause of action under § 1983. The fact is that when private persons can unlawfully take over and control the judicial process and have a person wrongfully indicted and arrested, they have violated his constitutional rights to due process of law.

■ Further, even though all of the action was taken by private persons, the fact that they in effect took over and controlled the judicial process by their conduct is sufficient to establish the "under color of law" requirement of § 1983. The reason for this position is that such wrongful takeover of the judicial process is abhorrent and is such an extreme violation of due process that it requires redress. That is the purpose of § 1983, even though there may be state remedies available, both civil and criminal.

The cause of action just recognized by the Court is limited to a fact pattern, if

such existed, whereby a person or persons decide in advance to give false and perjured testimony before a grand jury and/or in court and that this is the only testimony presented. Further, the result of this testimony must be an indictment and an arrest and following that, the person must be discharged, either before trial, or acquitted after trial or discharged after a reversal on an appeal. This cause of action would be recognized because persons would have knowingly, intentionally, and wrongfully controlled the judicial process for an illegal and improper purpose, and such conduct is totally offensive to our constitutional system of justice.

However, in the present case, the allegations in Count II of the complaint do not satisfy the narrow fact pattern set forth above. It is my conclusion that the plaintiffs failed to state a cause of action in violation of Title 42, Section 1983, in paragraph 14 of Count II of the amended complaint.

 Turning to plaintiffs' allegations in paragraph 18 of their second amended complaint, plaintiffs assert that the defendants obtained the indictments to discourage plaintiffs from circulating petitions. However, the Court notes that § 1983 provides redress only in the case of a deprivation of a constitutional right. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A claim under § 1983 must be grounded on the violation of a right of substance and not merely on a theoretical speculation that some right has been infringed. *Holmes v. Finney*, 631 F.2d 150 (10th Cir.1980).

 Thus, it is the Court's view that § 1983 requires an actual infringement of a constitutional right and that a threat to infringe such a right is not actionable under § 1983. Had the allegations been that the clerk of council, acting under color of state law, received the petitions and, for example, destroyed them or took some action that made valid petitions invalid, and this precluded the certification of the petitions and the placing of them on the ballot,

plaintiffs would have asserted a constitutional violation actionable under § 1983.

 However, in the present case, there is nothing in the record to suggest that plaintiffs' constitutional rights were actually infringed. Plaintiffs have not alleged that the defendants took action to actually prevent plaintiffs from circulating new petitions. Plaintiffs allege that defendants took action to discourage the circulation of new petitions. A cause of action will not lie, under § 1983, merely because a person was discouraged from exercising his constitutional right. To be actionable, there must be actual deprivation of a constitutional right. Accordingly, the Court finds that the plaintiffs have failed to allege a claim upon which relief can be granted in paragraph 18 of their second amended complaint.

Next, we turn to the issue of whether plaintiffs have stated a cause of action under § 1983 for selective prosecution. This Court has been unable to find any reported decisions recognizing selective prosecution as a § 1983 cause of action. Yet, given the existence of prosecutorial immunity, the lack of reported decisions on this issue is not surprising, and is not dispositive on the issue of the existence of such a cause of action.

42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

 In order to state a cause of action under § 1983 a plaintiff is required to allege two elements:

1) that the defendant acted under color of state law; and

2) that the defendant deprived plaintiff of a federally-protected right. See, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

In *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), the Supreme Court held:

> . . . to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

■ In *Briscoe v. Lahue, supra*, the Supreme Court, specifically dealing with the issue of a witness giving perjured testimony at a judicial proceeding held that "[i]t is not conceivable, however, that nongovernmental witnesses could act 'under color of law' by conspiring with the prosecutor or other state officials." Thus, this Court finds that an allegation that private parties conspired with a local prosecutor to selectively prosecute certain individuals would be sufficient to meet the requirements of action under "color of state law" for purposes of § 1983.

Also, in *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), the Supreme Court, in overturning a criminal conviction because the defendant had been selectively prosecuted, recognized that selective prosecution constitutes a denial of equal protection of the law in violation of the Constitution.

■ Thus, in the unusual case where private parties conspire with a prosecutor to select an individual for criminal prosecution under circumstances that would give rise to a claim for selective prosecution, this Court would recognize a cause of action under § 1983 for selective prosecution against the non-immune parties. The conspiracy with the prosecutor would provide the element of action under color of state law, and the selective nature of the prose-

cution would constitute a deprivation of a constitutional right, thus meeting the requirements for a claim under § 1983.

■ However, if private persons conspire among themselves to selectively present evidence to a prosecutor in an attempt to obtain indictments against certain individuals, and the prosecutor is not part of the conspiracy, there could not be a cause of action under § 1983, even if the selection of the individuals is based on an impermissible ground, as there would be no state action. In such a case, there would be nothing more than a conspiracy by witnesses to selectively complain.

■ In the present case, while the Court recognizes that pleadings are to be liberally construed, *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179 (5th Cir.1980), this Court is of the view that plaintiffs neither intended to nor did assert a claim against the defendants for selective prosecution. It is the allegations of the complaint that determine the nature of a plaintiffs' cause of action, not an interpretation subsequently applied to the allegations. *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467 (6th Cir.1964).

In *Oyler v. Boles, supra*, the Supreme Court held that the elements of selective prosecution are: 1) other similarly situated to the criminal defendant have not been prosecuted for similar conduct; and 2) the defendant was selected for prosecution based on impermissible grounds. The allegations made by the plaintiffs in Count II of their second amended complaint cannot be construed to set out a claim for selective prosecution. Although the plaintiffs allege that the defendants conspired with the local prosecutor to have them indicted, the plaintiffs neither assert that there are others similarly situated to them that were not prosecuted, nor that they were selected for prosecution based on characteristics they possessed outside of their opposition to the defendants.

Additionally, the materials submitted by the plaintiffs in anticipation of trial, even after Judge Green had injected selective prosecution into this case, did not set out

such a claim. Thus, the Court finds that the plaintiffs did not assert a claim for selective prosecution and that selective prosecution is not an issue in this case.

Finally, the Court has sought, while addressing the issues presented in this case, to advise public officials in Willoughby Hills and elsewhere, that if they use the authority of their office to infringe on the constitutional rights of others, they will be held responsible for the consequences of their actions. We live in a democracy, not a totalitarian system. Unfortunately, many public officials come to think, after being in office for a number of years, that the office is their private fiefdom, and they do not have to recognize the rights of others. This Court will not condone such conduct.

In summary, the Court finds that the only outstanding issues presented in this case are those set forth in Count II of plaintiffs' second amended complaint. Those allegations in Count II are that the defendants conspired to give false testimony before a grand jury in order to have the plaintiffs wrongfully indicted, and that the defendants took such action to discourage plaintiffs from initiating a second recall petition. The Court finds that neither allegation states a claim upon which relief can be granted and, accordingly, the Court hereby dismisses this action *sua sponte*.

IT IS SO ORDERED.