Neil J. ALIOTO, Plaintiff–Appellant,

v.

CITY OF SHIVELY, KENTUCKY, John Burks, Michael J. Donio, John Patterson, and Edward Neuner, Defendants–Appellees.

No. 86–6099.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1987.

Decided Dec. 29, 1987.

George S. Schuhmann, Kenneth Sales (argued), Louisville, Ky., for defendants-appellees.

G. William Bailey, Jr. (argued), Pate, Bailey and Rigney, Elizabethtown, Ky., for plaintiff-appellant.

Before KENNEDY and KRUPANSKY, Circuit Judges; and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Neil J. Alioto (Alioto) appealed from the district court's order granting summary judgment in favor of the defendants-appellees in this § 1983 action in which Alioto charged that the defendants had conspired to give and did give false testimony to the grand jury resulting in his subsequent indictment. The defendants-appellees are the City of Shively, Kentucky (City), John Burks (Burks), the Mayor of Shively, Michael J. Donio (Donio), former Chief of the Shively Police Department, and John Patterson and Edward Neuner, members of the Shively Police Department. The record disclosed the following facts.

Alioto served as an auxiliary (part-time) police officer for the Shively Police Department from 1974 to 1979, and again from May to December, 1980. In June, 1980, in

his capacity as a Shively Police Officer, Alioto investigated a rape and, as part of his investigation, gathered tissue samples such as semen and hair which were collectively referred to as a "rape kit." Under normal procedure, the "rape kit" was sent to the Kentucky State Crime Laboratory in Frankfort, Kentucky for scientific analysis. In this case, however, the rape kit "disappeared." Subsequently, the Jefferson County, Kentucky Grand Jury commenced an investigation of the rape kit's disappearance and indicted Alioto on charges of false swearing and tampering with evidence. Donio, Patterson, and Neuner appeared as witnesses before the grand jury. Following a jury trial, Alioto was found not guilty of the charges against him.

Alioto commenced the present § 1983 action in the United States District Court for the Western District of Kentucky on December 21, 1981 alleging that the defendants conspired to "have Plaintiff charged with the commission of a crime, unlawfully, illegally, and without cause or justification." In particular, Alioto claimed that the defendants "did in furtherance of such conspiracy, cause perjurious testimony to be given before the Grand Jury of Jefferson County, Kentucky, knowing such testimony to be false." The district court concluded that the defendants were entitled to absolute witness immunity and granted summary judgment in their favor.

On appeal, Alioto argued that the district court incorrectly concluded that the defendants in this case were immune from damages. In particular, he asserted that the doctrine of witness immunity was inapplicable in this case because he alleged that the defendants *conspired* to give incomplete and false testimony to the grand jury, and that this conspiracy took place well before they actually gave their testimony, i.e., during the investigative stage of the criminal charges against him.

■ In *Briscoe v. Lahue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Supreme Court concluded that "all witnesses—police officers as well as lay witnesses—are absolutely immune from liability based upon their testimony in judicial proceedings." *Id.* at 328, 103 S.Ct. at 1111–12 (citation and footnote omitted). Although the Court declined to address whether witness immunity applies to pretrial proceedings, *id.* at 328 n. 5, 103 S.Ct. at 1112 n. 5, absolute witness immunity also bars actions for damages against individuals who testify in grand jury proceedings. *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir.1985) (per curiam); *Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983); *Briggs v. Goodwin*, 712 F.2d 1444 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *San Filippo v. U.S. Trust Co. of N.Y.*, 737 F.2d 246 (2d Cir. 1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). The doctrine enunciated in *Briscoe v. Lahue* also shields from liability alleged conspiracies to give false and incomplete testimony in judicial proceedings. *Macko v. Byron*, 760 F.2d at 97. Accordingly, Alioto's argument that absolute witness immunity did not apply in this case is without merit, and defendants Donio, Patterson, and Neuner, all witnesses before the grand jury, were properly granted summary judgment in their favor.[1]

■ The district court also dismissed the City of Shively and Mayor Burks under the doctrine of absolute witness immunity. This doctrine, however, shields from liability only those defendants who gave testimony in a judicial proceeding. *Kompare v. Stein*, 801 F.2d 883, 887 n. 3 (7th Cir.1986). Accordingly, summary judgment in favor of the City of Shively and Burks, who did not testify, based upon the doctrine of witness immunity was improper.

■ Summary judgment in favor of these two defendants was, however, appropriate. A review of the record indicated that Alioto nowhere, in his complaint or otherwise, charged that conspiring to give

---

1. Alioto also argued on appeal that the defendants conspired to falsify evidence. Although the doctrine of witness immunity does not shield from liability alleged conspiracies to falsify non-testimonial evidence, the only facts asserted by Alioto concern the defendants' alleged conspiracy to give false testimony. Accordingly, this argument is also without merit.

false testimony was an official city policy or custom.

> [T]he language of § 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (emphasis in original). Consequently, summary judgment in favor of the City of Shively was proper.[2]

 With regard to defendant Burks, Alioto did not assert that he was personally involved in the alleged conspiracy. Indeed, in his brief, Alioto argued only that the action should go forward against Burks "on the theory that *the wrongdoing of the police officers* constitutes a municipal custom or policy, and that such custom or policy caused their conduct which was responsible for the deprivation of the constitutional rights of Alioto." *Appellant's Brief* 8 (emphasis added). It is well established that "[s]upervisory personnel are subject to liability [only] where evidence establishes that they 'authorized [or] approved ... the unconstitutional conduct of the offending officers.'" *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir.1984) (citation omitted). Defendants who are "sued, not because of any personal involvement in the case, but because of the positions they held at the time" cannot be held liable under the theory of vicarious liability or *respondeat superior. Id.* at 345–46. "[L]iability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a ... plaintiff must show that a supervisory

official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.) (citation omitted), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). *See also Kompare*, 801 F.2d at 886 n. 1. Alioto made no allegations of Burks' personal involvement, and, as is clear from his brief, sought to hold Burks liable solely on a theory of respondeat superior. Accordingly, the district court appropriately granted summary judgment in favor of Burks.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

---

2. In his brief Alioto asserted that he should be given the opportunity to establish an official policy or custom. He apparently did not, however, attempt to do so in response to the motion for summary judgment.